### C. H. PARHAM v. M. B. LANGFORD ET AL.

#### Decided April 21, 1906.

**1.—Assault and Battery—Suit for Damages.**

The provisions of the Penal Code to the effect that no verbal provocation justifies an assault and battery, but insulting and abusive words may be given in evidence in mitigation of the punishment affixed to the offense, are declaratory of the general principle which applies in a civil suit for damages for assault and battery.

**2.—Female Servant—Protection by Employer—Slander.**

A female helper or servant, without any other protector in the community, may be considered as under the protection of her employer in a matter of slanderous charges.

**3.—Truth of Slanderous Charges—Knowledge of Defendant.**

In a suit for exemplary damages for assault and battery, caused by slanderous words spoken of an inmate of defendant's family, it was not error to exclude testimony as to the bad character of the woman in a distant State many months prior to the assault, in the absence of evidence that the defendant knew of such character.

**4.—Charge Without Evidence.**

Because there was no evidence to warrant it, it was error for the court to charge the jury that they might consider, in mitigation of damages, any action or conduct of plaintiff that was reasonably calculated to bring on or cause the assault by which he was injured.

Appeal from the District Court of Baylor County. Tried below before Hon. J. M. Morgan.

*D. A. Holman* and *D. F. Goss,* for appellant.

*Glasgow & Kenan, J. T. Montgomery* and *Dickson & Britain,* for appellees.

CONNER, CHIEF JUSTICE.—This appeal is from a judgment against appellant who sued appellees M. B. Langford, Doc Parsons and another for damages to his person received in a difficulty between the parties

named. Appellant alleged that the assault upon him by appellees was unlawful, willful and malicious, and he prayed for both actual and exemplary damages.

The principal contention here, and with which we must agree, is that the verdict and judgment are contrary to the law and the evidence. The uncontradicted evidence is that appellant had made remarks derogatory to a young lady who was an inmate of the home of appellee Langford in the capacity of a helper to Mrs. Langford; that appellee Doc Parsons was also an inmate of the Langford household; that upon the occasion in question the parties met; that appellee Langford inquired of appellant if he had made certain remarks construed by appellees as slanderous; that appellant acknowledged that he had made the remarks imputed to him; that thereupon appellee Doc Parsons, using an opprobrious epithet, struck appellant and the fight began. It is also undisputed that appellee Langford assisted Doc Parsons in the fight. They were therefore undoubtedly principals and alike liable for results.

The alleged slanderous language mentioned was the only defense interposed by appellees on the trial and none other is relied upon here as supporting the judgment. It is statutory with us, however, that "no verbal provocation justifies an assault and battery, but insulting and abusive words may be given in evidence in mitigation of the punishment affixed to the offense."

Penal Code, article 505. While the statute quoted is in the penal code and relates to offenses for which prosecution may be maintained, it nevertheless is but declaratory of the general principle which applies to the facts of this case. It follows, therefore, that however unjustifiable, if it was so, may have been appellant's language in reference to the young lady inmate of Mr. Langford's home, it did not justify the assault. The language, at most, but went in mitigation of the exemplary damages appellant sought to recover. There being no justification in law for the assault, appellees were liable at all events for the actual damages that resulted therefrom.

Appellant insists that the young lady referred to was not under the protection of the appellee Langford, her relation to the family being that merely of a servant. We are not, however, inclined to support this contention. The proof fails to show that she had any other protector in the community, and we think that she was at least under the temporary protection of appellee Langford. But whether so or not, the relation of appellees to the young lady in question, together with all the other facts and circumstances, was proper for the consideration of the jury upon the issue of exemplary damages.

Appellant complains of the action of the court in excluding evidence offered by him for the purpose of showing the truth of his statements reflecting on the chastity of the young lady in question, in order to "prove the general character of the female insulted to ascertain the extent of the provocation" and "to enable the jury to act advisably reflecting the appropriate punishment" by exemplary damages. The evidence offered consisted of the depositions of persons in Tennessee, whose testimony tended to show the general character of the young lady alluded to in that State, and the record fails to show that appellees, at and prior to the time of the assault, knew of such general character. We therefore

think the court's ruling correct. It must be remembered that appellant was seeking to inflict upon appellees a punishment by way of exemplary damages. If appellees, by general reputation in the community in which the young lady lived or otherwise, knew that she was of bad character and knew that appellant's language was justified by the facts, then, indeed, a jury might infer that appellees' assault was flagrantly malicious. On the contrary, however, whatever may have been the conduct or general character of the young lady in Tennessee many months prior to her location in Texas, if appellees were without knowledge thereof, and if while in the family of appellee and during her residence in Texas, her conduct, character and demeanor had been such as to impress appellees with the belief that she was entitled to the protection of an innocent woman, then a jury might well decline to deal with appellees so severely in the way of punishment. The question when determining to what extent appellees should be punished was, How did the facts and circumstances as known to them operate upon their minds? Were they such as to reasonably produce that state of mind entitling them in the judgment of the jury to a mitigation of exemplary damages? The general character of the young lady in question, prior to the difficulty, in the community in which she had been living in Texas would doubtless be admissible as affording a reasonable presumption that appellees knew what it was, but as stated, we think her acts and general reputation in a distant State, many months prior to the difficulty, were too remote and inadmissible without evidence tending to show that appellees had knowledge thereof.

We think appellant's seventh assignment, objecting to the action of the court in giving the special charge, well taken. The charge was to the effect that the jury might consider in mitigation of damages any' action or conduct of plaintiff that was reasonably calculated to bring on or cause the assault by which he was injured. We see nothing in the record calling for this special charge. There is nothing in the evidence indicating that at the time of the assault appellant did any act calculated to bring it on. True, he acknowledged the use of the words imputed to him, but this acknowledgment, together with all the other'circumstances, simply constituted a part of the case to be considered by the jury and no necessity existed for the special emphasis said special charge was calculated to give.

All assignments not disposed of by the foregoing conclusions are overruled, but because the verdict and judgment are contrary to the law and evidence on the issue of actual damages, the judgment is reversed and the cause remanded.

*Reversed and remanded.*